DECISION AND JUDGMENT ENTRY
This is a consolidated appeal from two judgments of the Lucas County Court of Common Pleas. The first judgment, following a jury trial, found appellant guilty of three counts of aggravated murder, one count of kidnaping, one count of aggravated robbery and three counts of forgery. (Case No. CR93-7212) As to the aggravated murder convictions, appellant was sentenced to be put to death. As to all of the other counts, appellant was sentenced to a total period of incarceration of not less than twenty-four and one-half years nor more than fifty years. The second judgment denied appellant's petition for postconviction relief filed eleven months after sentence was imposed. (Case No. CR93-7212B) On January 23, 1998, this court ordered the two appeals consolidated. We will first consider appellant's direct appeal.
 DIRECT APPEAL
In the direct appeal, appellant sets forth the following assignments of error:
"FIRST ASSIGNMENT OF ERROR:
"MR. DIXON WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.
"SECOND ASSIGNMENT OF ERROR:
 "THIS COURT ERRED IN CASE NO. L-94-223, STATE OF OHIO V. ARCHIE J. DIXON WHEN IT RULED THAT A STATEMENT MADE BY MR. DIXON WAS ADMISSIBLE AGAINST HIM BECAUSE (A) THE STATEMENT WAS NOT PROPERLY ADMISSIBLE, AND (B) THERE HAD NEVER BEEN A DETERMINATION OF VOLUNTARINESS BY THE TRIAL COURT.
"THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT DENIED MR. DIXON HIS RIGHTS TO DUE PROCESS UNDER THE CONSTITUTIONS OF THE UNITED STATES AND THE STATE OF OHIO WHEN IT FAILED TO CONDUCT AN INQUIRY AS TO WHETHER HE KNOWINGLY AND INTELLIGENTLY WAIVED HIS RIGHT TO TESTIFY AT TRIAL.
"FOURTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT INSTRUCTED THE JURY THAT IT COULD ASSUME MR. DIXON'S GUILT AND THAT THE ASSUMPTION WOULD REQUIRE A GUILTY VERDICT. TR 1252-1253.
"FIFTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT VIOLATED MR. DIXON'S RIGHTS TO A FAIR TRIAL, TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT, AND TO DUE PROCESS UNDER THE CONSTITUTIONS OF THE UNITED STATES AND OF THE STATE OF OHIO WHEN IT REFUSED TO PERMIT MR. DIXON TO PRESENT RELEVANT AND ADMISSIBLE MITIGATING EVIDENCE AS TO: (A) PROSECUTIONS FOR AGGRAVATED MURDER IN THE KILLINGS OF JASON MERICLE AND MELISSA ANN HERSTRUM [TR 1337-1339]; (B) MR. DIXON'S LONG-STANDING OFFER TO ENTER A PLEA TO THE INDICTMENT IN EXCHANGE FOR THE STATE DISMISSING THE DEATH SPECIFICATIONS [1339]; (C) MR. DIXON'S PRIOR INCARCERATION ON FALSE CHARGES OF RAPE [1350-1351].
"SIXTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND DENIED MR. DIXON HIS RIGHTS TO MOUNT THE DEFENSE OF HIS CHOICE, TO DUE PROCESS OF LAW, AND TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT WHEN IT INSISTED OVER HIS OBJECTION ON INSTRUCTING THE JURORS TO WEIGH THE HISTORY, CHARACTER, AND BACKGROUND OF THE DEFENDANT AFTER THE COURT PRECLUDED HIM FROM INTRODUCING THE ONLY EVIDENCE HE OFFERED ON HIS HISTORY, CHARACTER, AND BACKGROUND. TR 1459-1463.
"SEVENTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND DENIED MR. DIXON HIS RIGHTS TO MOUNT THE DEFENSE OF HIS CHOICE, TO DUE PROCESS OF LAW, AND TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT WHEN IT INSISTED OVER HIS OBJECTION ON INSTRUCTING THE JURORS TO WEIGH THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AGAINST THE AGGRAVATING CIRCUMSTANCES WHEN MR. DIXON SET FORTH NEITHER EVIDENCE NOR ARGUMENT SUGGESTING THAT THE NATURE AND CIRCUMSTANCES OF THE OFFENSE WERE IN ANY WAY MITIGATING. TR. 1459-1462.
"EIGHTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT'S R.C. 2929.03(F) OPINION IS SO FUNDAMENTALLY FLAWED THAT IT DENIES MR. DIXON HIS RIGHTS TO A FAIR TRIAL, TO DUE PROCESS, AND TO BE FREE FROM CRUEL AND
 UNUSUAL PUNISHMENT AS PROTECTED BY THE CONSTITUTIONS OF THE UNITED STATES AND OF THE STATE OF OHIO, AND NO INDEPENDENT REVIEW CAN CURE ITS ERRORS. SPECIFICALLY, THE OPINION
 IGNORES PROPERLY ADMISSIBLE AND RELEVANT MITIGATION EVIDENCE MR. DIXON ATTEMPTED TO PLACE BEFORE THE JURY, SPECULATES UPON FACTS NOT IN EVIDENCE, FAILS UTTERLY TO EXPLAIN WHY THE AGGRAVATING CIRCUMSTANCES IN THIS CASE OUTWEIGHED THE MITIGATING FACTORS, AND
 IMPROPERLY AND PREJUDICIALLY WEIGHS HE NATURE AND CIRCUMSTANCES OF THE OFFENSE AGAINST THE MITIGATING FACTORS.
"NINTH ASSIGNMENT OF ERROR:
 "INSOFAR AS ANY OF THE ASSIGNED ERRORS COMPLAINED OF WERE NOT ADEQUATELY PRESERVED, TRIAL COUNSEL PROVIDED MR. DIXON WITH CONSTITUTIONALLY INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THEIR DUTY AND IN VIOLATION OF HIS RIGHTS TO FAIR TRIAL AND DUE PROCESS AND TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT.
"TENTH ASSIGNMENT OF ERROR:
 "THE CUMULATIVE EFFECT OF THE ERRORS ADDRESSED WAS PREJUDICIAL AND REQUIRES REVERSAL EVEN IF NONE OF THE ERRORS IS HELD TO HAVE BEEN INDIVIDUALLY SO HARMFUL AS TO REQUIRE REVERSAL
"ELEVENTH ASSIGNMENT OF ERROR:
 "OHIO'S DEATH PENALTY LAW AS APPLIED VIOLATES R.C. 2929.05(A) BY REQUIRING APPELLATE COURTS AND THE SUPREME COURT, IN CONDUCTING THEIR R.C. 2929.05(A) REVIEW OF "SIMILAR CASES" FOR PROPORTIONALITY, TO REVIEW ONLY THOSE IN WHICH A SENTENCE OF DEATH WAS IMPOSED AND IGNORE THOSE IN WHICH A SENTENCE OF LIFE WITH PAROLE ELIGIBILITY AFTER TWENTY FULL YEARS OR LIFE WITH PAROLE ELIGIBILITY AFTER THIRTY FULL YEARS WAS IMPOSED. THIS APPLICATION OF R.C. 2929.05(A) ALSO VIOLATES THE RIGHTS TO FAIR TRIAL AND DUE PROCESS AND RESULTS IN THE IMPOSITION OF CRUEL AND UNUSUAL PUNISHMENT AS SET FORTH IN THE FIFTH, SIXTH, EIGHTH, NINTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND IN SECTIONS 1, 5, 9, 10, 16, AND 20, ARTICLE I OF THE OHIO CONSTITUTION.
"TWELFTH ASSIGNMENT OF ERROR:
 "IMPOSITION OF THE DEATH PENALTY, AT LEAST IN LUCAS COUNTY, OHIO, IS FREAKISH, CAPRICIOUS, AND ARBITRARY.
"THIRTEENTH ASSIGNMENT OF ERROR:
"OHIO'S DEATH PENALTY LAW IS UNCONSTITUTIONAL
"FOURTEENTH ASSIGNMENT OF ERROR:
 "THE AGGRAVATING CIRCUMSTANCES DO NOT OUTWEIGH THE MITIGATING FACTORS BEYOND A REASONABLE DOUBT; THE DEATH SENTENCE IN THIS CASE IS INAPPROPRIATE; AND THE DEATH SENTENCE IN THIS CASE IS OUT OF PROPORTION TO SENTENCES IN OTHER CASES REVIEWED BY THIS COURT"
 Facts
In the early morning hours of September 22, 1993, twenty-two-year-old Christopher Hammer was beaten severely, bound and gagged, buried in a grave in a secluded area of Lucas County while still conscious, and left to die. On November 16, 1993, as a result of the investigation of Hammer's disappearance, appellant was indicted on three counts of aggravated murder in violation of R.C. 2903.01(A) and (B), with specifications as to each count, pursuant to R.C. 2929.04(A)(7) and 2941.14, that the murder was committed during the course of an aggravated robbery and during a kidnaping; one count of kidnaping in violation of R.C. 2905.01(A); one count of aggravated robbery in violation of R.C.2911.01(A)(2), and three counts of forgery in violation of R.C. 2913.31. On November 17, 1993, counsel was appointed for appellant and he entered pleas of not guilty as to all counts and specifications.
Appellant filed many pre-trial motions, but only those relevant to issues raised on appeal are summarized herein. On January 27, 1994, appellant filed a motion to suppress statements he had made to the police on November 9, 1993 following his arrest, including a confession to Hammer's murder. A hearing was held on the motion and on August 23, 1994, the trial court granted the motion to suppress two statements, one of which was appellant's confession. The state appealed the granting of the motion to suppress pursuant to R.C. 2945.67 and Crim.R. 12(J). On appeal, the state challenged only the suppression of appellant's confession. On March 3, 1995, this court reversed the trial court's order suppressing the confession and remanded the matter. State v. Dixon
(1995), 101 Ohio App.3d 552. Appellant filed a notice of appeal to the Supreme Court of Ohio and on July 19, 1995, that court denied leave to appeal and dismissed the matter as not involving a substantial constitutional question. State v. Dixon (1995), 73 Ohio St.3d 1410. On January 16, 1996, the United States Supreme Court denied appellant's petition for a writ of certiorari. Dixon v. Ohio (1996), 516 U.S. 1077.
Appellant's trial began on October 30, 1995 and concluded on November 6, 1995. On November 7, 1995, the jury returned verdicts of guilty as to all counts and specifications in the indictment. The mitigation phase of the trial began on November 8, 1995, and on the following day, the jury recommended imposition of the death sentence as to the aggravated murder convictions. In a judgment entry filed November 22, 1995, the trial court accepted the jury's recommendation. The trial court found that, for purposes of sentencing, the convictions on the second and third counts of aggravated murder merged with the conviction on the first count and ordered, as to the first count, that appellant be put to death. The trial court imposed consecutive sentences totaling not less than twenty-four nor more than fifty years on the convictions for aggravated robbery, kidnaping and forgery. On December 6, 1995, the trial court filed a separate opinion in support of its finding that the aggravating circumstances of this case outweigh the mitigating factors beyond a reasonable doubt.
This court will review appellant's conviction and death sentence imposed pursuant to the three-part test set forth in R.C. 2929.05(A). First, we must address appellant's assignments of error. Second, we must independently weigh the aggravating circumstances in this case against any factors which mitigate against imposition of the death penalty. Third, we must independently consider whether appellant's sentence is disproportionate to the penalty imposed in similar cases. For the Creasons set forth below, we affirm the judgment of the trial court and uphold the sentence of death.
 Assignments of Error I.
In his first assignment of error, appellant asserts that trial counsel was ineffective during voir dire, opening statement, cross-examination of the state's witnesses, closing argument and mitigation. We will address appellant's claims as to each aspect of the trial separately.
To prevail on a claim of ineffective assistance of counsel, appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. This standard requires appellant to satisfy a two-part test. First, appellant must show that counsel's representation fell below an objective standard of reasonableness. Second, appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different when considering the totality of the evidence that was before the court.Strickland v. Washington (1984), 466 U.S. 668. This test is applied in the context of Ohio law that states that a properly licensed attorney is presumed competent. State v. Hamblin (1988), 37 Ohio St.3d 153.
 A. Voir Dire
Appellant asserts that trial counsel did not attempt to question prospective jurors as to their beliefs on capital punishment. Appellant argues that trial counsel's questioning was kluster and passive.
In reviewing a conviction that resulted in a sentence of death, the Supreme Court of Ohio held that "[t]he conduct of voir dire by defense counsel does not have to take a particular form, nor do specific questions have to be asked." State v. Evans (1992), 63 Ohio St.3d 231,247.
This court has thoroughly examined the transcript of proceedings during voir dire. The record shows that all prospective jurors were questioned by the court and by the prosecutor as to their views on capital punishment. Due to the nature of this proceeding, by the time it was defense counsel's turn to question a prospective juror, that individual had already been questioned at length by the court and by the prosecutors as to his or her views on the death penalty. Each person who served on the jury in this case was asked by the trial court if he or she was morally, religiously, philosophically or otherwise opposed to the death penalty, as well as whether he or she could follow the court's instructions and, if appropriate, impose the death penalty. Any further questioning by defense counsel as to the death penalty would have been redundant. We note that defense counsel did question every prospective juror as to whether he or she could reach a sentencing decision based on the law and the facts. Based on the foregoing, this argument is without merit.
 B. Opening statement
Appellant next argues that trial counsel admitted appellant's guilt during opening statement and did not advocate for their client. This court has reviewed the transcript of defense counsel's opening statement and we find that counsel did not "throw in the towel," as appellant asserts, and certainly did not concede appellant's guilt. Counsel stated that "[a]s he sits there, he sits innocent. Mr. Dixon is innocent until the prosecution proves each and every one of [the charges]." Counsel's opening statement was brief, but certainly did not undermine the reliability of the trial as appellant claims. This argument is without merit.
 C. Cross-examination of State's Witnesses
Appellant asserts that defense counsel conducted minimal cross-examination of the state's witnesses and that the questions trial counsel asked were generally irrelevant and failed to cast any doubt upon the witnesses' testimony.
This court is struck by the overwhelmingly incriminating nature of the evidence against appellant as well as by the certainty with which each witness offered his or her testimony and identification of appellant. Extensive cross-examination of these witnesses by defense counsel would have served merely to further emphasize for the jury the extent of the evidence against appellant and the decision not to do so was a matter of trial tactic. This argument is without merit.
 D. Closing Argument
Appellant asserts that trial counsel's closing argument "was a failure" and again argues that counsel conceded appellant's guilt. This court has thoroughly reviewed trial counsel's closing argument. By the time defense counsel stood to give their closing argument, they faced a jury that had heard appellant's taped confession to a horrible crime and had listened to extensive testimony which clearly implicated appellant in various aspects of the assault, robbery, kidnaping and murder of Christopher Hammer, as well as several acts of forgery. Trial counsel reminded the jurors that appellant had made his confession voluntarily. Counsel challenged the jury to hold the state to its burden of proof beyond a reasonable doubt as to each and every element of all of the offenses charged. Counsel reminded the jury that eyewitness Kirsten Wilkerson, appellant's girlfriend, testified after arranging with the state for a plea bargain in the hope of reducing her sentence for her involvement in this crime. In considering a claim that trial counsel was ineffective at closing argument, this court stated in State v. Hull
(Dec. 3, 1999), Lucas App. No. L-98-1307, unreported:
 "* * * The decisions made regarding closing argument by trial counsel in the case sub judice were legitimate trial tactics. This court will not resort to micro-management of closing arguments by trial lawyers."
For the foregoing reasons, appellant's argument is without merit.
 E. Mitigation
Lastly, appellant asserts that trial counsel was ineffective during mitigation. Appellant argues that trial counsel should have presented evidence of his extremely troubled background to soften the state's portrayal of him as a ruthless killer.
We note preliminarily that defense counsel attempted to offer testimony in mitigation as to other capital cases wherein the state ultimately agreed to the defendants' entering guilty pleas to murder without death penalty specifications. As evidence of appellant's willingness to take responsibility for his actions, the defense also wanted to address the jury as to appellant's offer to plead guilty to all counts if the state would dismiss the death penalty specifications. Further, in an attempt to provide insight into appellant's background in the months immediately prior to Hammer's murder, defense counsel wished to present evidence relating to a charge of rape brought against appellant in 1992 that was subsequently dismissed after appellant was in custody for eight months. The trial court prohibited appellant from producing testimony as to any of the foregoing matters. Ultimately, the only evidence the defense produced on appellant's behalf was the testimony of the chief of the Bureau of Sentence Computation for the Ohio Department of Rehabilitation and Correction, who testified that if appellant were given a life sentence, the earliest he could be released would be twenty-eight years if his sentences were ordered to be served concurrently.
"The decision to forgo presentation of additional mitigating evidence does not itself constitute proof of ineffective assistance of counsel."State v. Keith (1997), 79 Ohio St.3d 514, 536, citing State v. Johnson
(1988), 24 Ohio St.3d 87 at 91. Further, we find that appellant has failed to prove that he was prejudiced in this regard. To do so would require that he show that there was mitigating evidence counsel failed to present and that there is a reasonable probability that the evidence would have convinced the jury to impose a life sentence. Meeting that burden would necessitate proof outside the record, such as affidavits demonstrating a lack of effort to investigate appellant's background or the availability of additional mitigating evidence. Such a claim is not appropriately considered on a direct appeal, Keith, supra, at 536, but is properly considered in a postconviction proceeding. See State v. Scott
(1989), 63 Ohio App.3d 304, 308. We therefore find appellant's argument without merit.
Based on the foregoing, this court finds that appellant has failed to show that counsel's representation fell below an objective standard of reasonableness as well as a reasonable probability that, but for the alleged errors, the result of the proceeding would have been different when considering the totality of the evidence that was before the court. Accordingly, appellant's first assignment of error is not well-taken.
 II.
In his second assignment of error, appellant asserts that this court erred when it reversed the trial court's decision suppressing appellant's confession which came before this court on an interlocutory appeal by the state. See State v. Dixon (Mar. 3, 1995), Lucas App. No. L-94-223, unreported. Appellant's arguments under this assignment of error should have been raised in a motion for reconsideration of this court's decision immediately after our decision was released in March 1995 and thus are not properly before the court now as part of his direct appeal of the trial court's judgment of conviction and sentence. Accordingly, appellant's second assignment of error is not well-taken.
 III.
In his third assignment of error, appellant asserts that he was denied his right to due process when the trial court failed to inquire as to whether he knowingly and intelligently waived his right to testify at trial. Appellant asserts that the record does not show that he was advised of his right to testify.
This precise issue was addressed by the Supreme Court of Ohio in Statev. Bey (1999), 85 Ohio St.3d 487, 499-500, as follows:
 "* * * [I]n Ohio, courts of appeals have held that a trial judge is not required to conduct an inquiry with the defendant about the decision whether to testify. See, e.g., State v. Oliver (1995), 101 Ohio App.3d 587 * * * In fact, most courts have ruled that neither the United States Constitution nor applicable rules require the trial judge to ask the defendant about the decision not to testify. * * * [Citations omitted.] We agree and hold that a trial court is not required to conduct an inquiry with the defendant concerning the decision whether to testify in his defense. * * *" [Emphasis added.]
Further, there is nothing in the record of this case to suggest that appellant misunderstood or was unaware of his right to testify or that trial counsel failed to advise him of that right. Based on the foregoing, this court finds appellant's third assignment of error not well-taken.
 IV.
In his fourth assignment of error, appellant asserts that the trial court erred when it "instructed the jury that it could assume Mr. Dixon's guilt and that the assumption would require a guilty verdict." Appellant argues that the trial court's words amounted to an instruction that the jurors could assume his guilt. Appellant concedes that no objection was made to the instruction in question and asserts that it amounted to plain error.
The Supreme Court of Ohio has consistently stated that the failure to object to jury instructions at trial as required by Crim.R. 30, absent plain error, constitutes waiver of any claim of error on appeal. Statev. Williford (1990), 49 Ohio St.3d 247, 251; State v. Long (1978),53 Ohio St.2d 91. While Crim.R. 52(B) provides that "* * * plain errors or defects affecting substantial rights may be noticed although they are not brought to the attention of the trial court[,]" notice of plain error must be taken with the utmost caution, under exceptional circumstances, and only in order to prevent a manifest miscarriage of justice. Long,supra; State v. Landrum (1990), 53 Ohio St.3d 107, 111; State v.Franklin (1991), 62 Ohio St.3d 118, 128. An appellate court that reviews a proceeding for plain error must examine the evidence admitted at trial and determine whether the jury would have convicted the defendant even if the error had not occurred. State v. Slagle (1992), 65 Ohio St.3d 597,605.
"[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge."Cupp v. Naughten (1973), 414 U.S. 141, 146-147.
In the challenged portion of the jury instructions, the trial court stated:
 "* * * Thus, assuming a finding of the defendant is guilty beyond a reasonable doubt of the aggravated murder with prior calculation and design of Christopher Hammer as charged in Count 1 of the indictment, and further assuming a finding as to Specification 1 that the aggravated murder of Christopher Hammer was committed during the course of a kidnapping, and further finding beyond a reasonable doubt that the defendant, Archie J. Dixon, was either a principal offender in that murder or that the aggravated murder was committed with prior calculation and design, will mandate a finding of guilty as to Specification 1. * * *"
We have reviewed the entire transcript of the trial court's instructions and we conclude that the trial court did not, either in the challenged portion or at any other point, direct the jury to assume appellant's guilt. The trial court began its instruction by telling the jury that the defendant is presumed innocent until his guilt is established beyond a reasonable doubt. The trial court instructed at length as to the state's burden of proof, the concept of reasonable doubt, what constitutes evidence, and the numerous other points of law to be considered by the jury in reaching a verdict. When the challenged instruction is read as a whole, it becomes clear that the trial court merely used the words "assuming a finding * * *" as another way of saying "if you find * * *." Based on the foregoing, we find that the trial court did not instruct the jury to assume appellant's guilt and there was, therefore, no plain error. Accordingly, appellant's fourth assignment of error is not well-taken.
 V.
In his fifth assignment of error, appellant asserts that the trial court erred by not allowing appellant to present certain evidence during the mitigation phase. Appellant argues that Ohio law places "essentially no limits" on what may be offered in mitigation.
It is well-established that a defendant must be given great latitude in the presentation of evidence supporting mitigating factors, R.C.2929.04(C); Lockett v. Ohio (1978), 438 U.S. 586, 604. Neither the Supreme Court of Ohio nor the United States Supreme Court, however, has limited "the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense." Lockett, supra, fn. 12; State v. Jenkins
(1984), 15 Ohio St.3d 164, 189. Thus, courts are required to consider all relevant mitigating evidence. Jenkins, supra, at 189. Further, the Rules of Evidence apply to the sentencing phase of a capital trial. SeeState v. Glenn (1986), 28 Ohio St.3d 451, 458.
Appellant first argues that he should have been permitted to introduce evidence as to two earlier prosecutions in Lucas County wherein the defendants were charged with aggravated murder with death penalty specifications but pled guilty to aggravated murder without the death specifications. Appellant argued in the trial court that he should be permitted to refer to those cases and suggest to the jury that the reason he was not offered a plea bargain, when the defendants in the earlier capital cases were permitted to do so, was that he had confessed to the crime whereas the other defendants had not. Appellant argued that a death sentence in his case therefore would be inappropriate and that a comparison with the earlier cases would help the jury understand why. The trial court found that appellant was essentially attempting to have the jury conduct a proportionality review, which is a consideration for the appellate court, not the trier of fact. The trial court also found that the circumstances surrounding the pleas in the other two cases were based on the specific facts and evidence of each case and were not relevant to this case.
Appellant insists that the reason for wanting to introduce the other two murder cases is solely to emphasize the inappropriateness of the death penalty in this case. We find, first of all, that appellant's argument as to "appropriateness" is merely another way of couching an argument as to proportionality, which is a question for the reviewing court to consider in a death penalty case. We find further that any evidence as to the other two cases is wholly irrelevant to the issue of mitigation in this case, State v. Roe (1989), 41 Ohio St.3d 18, 25; Statev. Steffen (1987), 31 Ohio St.3d 111, paragraph one of the syllabus; R.C. 2929.03(D), and was thus properly excluded. Jenkins, supra, at 189. Accordingly, this argument is without merit.
Appellant next argues that the trial court should have permitted him to introduce evidence as to his "long-standing offer" to plead guilty to the indictment if the death specifications were dismissed because his offer showed that he accepted responsibility for what he had done and that he was willing to be punished for his crime. The Supreme Court of Ohio has held that a prosecutor's offer to plea bargain in a capital case is not a mitigating factor and is not relevant to the issue of whether the offender should be sentenced to death. See State v. Webb (1994),70 Ohio St.3d 325; State v. Sneed (1992), 63 Ohio St.3d 3. While those cases dealt with plea offers made by the prosecutor rather than by the defendant, we find that the court's argument in those cases can be applied herein and that appellant's offer to enter a plea is not relevant to whether he should be sentenced to death. A defendant's willingness in a capital case to plead to an offense is evidence that he hopes to avoid a death sentence, not that he accepts responsibility for his actions. Appellant also argues that his offer to enter a plea is relevant to his "moral culpability." We fail to see how something that took place after the crime in this case can be relevant to the perpetrator's "moral culpability" for his actions. This argument is without merit.
Appellant also argues that the trial court should have allowed him to tell the jury that prior to Christopher Hammer's murder he was incarcerated for eight months after being charged with rape. When DNA testing confirmed that appellant did not commit the rape, he was released. Appellant asserts that the incarceration is a part of appellant's history and is "potentially relevant" to help explain his state of mind at the time of the murder. The trial court found that evidence as to the incarceration was not relevant to this case. We agree and find that the trial court did not err by excluding this evidence as not relevant to appellant's character or the circumstances of his offense. This argument is without merit.
Based on the foregoing, this court finds that appellant's fifth assignment of error is not well-taken.
 VI. VII.
In his sixth assignment of error, appellant asserts that the trial court erred by instructing the jury to weigh in mitigation his history, character and background after refusing to allow him to introduce evidence as to those matters in mitigation. Appellant argues that a trial court should not comment on any mitigating factors on which the defendant does not rely because doing so would focus the jury's attention on the absence of such evidence, thereby improperly shifting the burden of proof from the state to the defendant.
In his seventh assignment of error, appellant asserts that the trial court erred by instructing the jury to weigh the nature and circumstances of the offense against the aggravating circumstances when appellant had not presented any evidence suggesting that the nature and circumstances of the offense were in any way mitigating.
Prior to closing argument for the sentencing phase, defense counsel asked the trial court to strike from its instructions to the jury any language as to "* * * the nature and circumstances of the offense, the history, character and background of the offender." The trial court overruled the objection to the language, finding that the wording is mandated by R.C. 2929.04(B), which states in relevant part: "* * * the * * * jury * * * shall consider, and weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character, and background of the offender, and all of the following factors: * * *." However, when the trial court read its instructions to the jury, it failed to include the language referring to the nature and circumstances of the offense and the defendant's "history, character and background." As soon as the jury retired to begin deliberating, the trial court realized that it had failed to include the disputed language in its oral instructions to the jury. After discussing the omission with defense counsel and the prosecutors, the trial court added the language to the written form that was going to be given to the jury. The trial court told counsel that it did not want to call the jury out and explain the additional language because doing so "would tend to highlight it."
In State v. DePew (1988), 38 Ohio St.3d 275, the appellant claimed the trial court erred when, in its instructions to the jury, it listed all seven of the mitigating factors set forth in R.C. 2929.04(B) although the appellant had not argued all of them. The DePew court noted that the trial court in that case had not commented on any of the seven factors when it read them to the jury in its instructions. The DePew court found that the trial court had not committed prejudicial error, but stated that "* * * the better practice is certainly to refrain from even referring to mitigating factors not raised by the defendant." Id. at 290. While appellant asserts that a trial court should not comment on any mitigating factors which the defendant does not present, he does not claim that the trial court in this case actually did that. We find that the trial court in this case, as in DePew, did not comment on the nature and circumstances of the offense or the subject of appellant's history, character and background. In fact, those issues were not even mentioned in the oral instructions because the trial court simply forgot to write the language on the written form from which it was reading. It appears from the record that the trial court was cognizant of the risk of emphasizing those issues and chose to add the language to the written instructions without further explanation so as not to improperly "highlight" them. We therefore find that the trial court's decision to include in its instructions the language as to the nature and circumstances of the offense and appellant's history, character and background did not cause the jury to "focus" its attention on those factors to appellant's prejudice and did not render the penalty stage of the trial fundamentally unfair. Accordingly, appellant's sixth and seventh assignments of error are not well-taken.
 VIII.
In his eighth assignment of error, appellant challenges the adequacy of the trial court's written opinion filed pursuant to R.C. 2929.03(F). Appellant alleges that the trial court: 1) refused to consider relevant mitigating evidence; 2) improperly speculated about facts not in evidence; 3) failed to explain why the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt and 4) improperly weighed the nature and circumstances of the offense against the mitigating factors.
As to appellant's first claim, that argument was considered and found to have no merit under appellant's fifth assignment of error. Second, appellant complains that the trial court improperly "speculated" about facts not in evidence when it referred to "the fear and torture the victim must have endured before he lapsed into a welcomed state of unconsciousness." Suffice it to say that we find the trial court's brief statement as quoted above to be remarkably restrained, and not the least bit inappropriate or prejudicial, in light of the horrifying circumstances of the murder appellant committed. As to appellant's other claims, we find that, although appellant apparently is not satisfied with the language of the trial court's opinion, the trial court did comply with the requirements of R.C. 2929.03(F). The trial court reviewed the mitigating evidence produced by appellant and explained that it gave "very little weight" to defendant's age as a mitigating factor and "no weight" to the evidence as to how much time appellant would spend in prison if the jury recommended life imprisonment. Further, while it is clear that the trial court considered the nature and circumstances of the offense, there is no evidence in the opinion that the trial court improperly weighed those facts against the mitigating factors. Moreover, while recognizing the importance of the trial court setting forth the reasons for its decision, the Supreme Court of Ohio has held in numerous cases that independent review at each stage of appeal can correct any omissions of the trial court in failing to conform to the requirements of R.C. 2929.03(F). See State v. Hill (1996),75 Ohio St.3d 195, 210; State v. Lewis (1993), 67 Ohio St.3d 200, 204;State v. Maurer (1984), 15 Ohio St.3d 239, 247. Based on the foregoing, we find appellant's eighth assignment of error not well taken.
 IV.
In his ninth assignment of error, appellant asserts that, insofar as any of the errors of which he complains were not raised in the trial court, trial counsel was ineffective. Appellant does not, however, provide this court with any specific instances of alleged ineffectiveness of counsel but rather uses this "catchall" assignment of error to present a general argument as to the concept of ineffective assistance of counsel. Accordingly, this assignment of error is not well-taken.
 X.
In support of his tenth assignment of error, appellant asserts that he has been prejudiced by the cumulative effect of the errors he has set forth, even if none of the errors individually constitute reversible error. The Supreme Court of Ohio has recognized the doctrine of cumulative error when numerous "harmless errors" are combined. State v.DeMarco (1987), 31 Ohio St.3d 191. In order for the doctrine of cumulative error to be applicable, however, an appellate court must find that multiple errors, none of which individually rose to the level of prejudicial error, actually occurred in the trial court. In this case, our review of appellant's first nine assignments of error has failed to reveal any error, harmless or otherwise, on the part of the trial court. Accordingly, there was no "cumulative error" and appellant's tenth assignment of error is not well-taken.
 XI.
In his eleventh assignment of error, appellant asserts that Ohio's death penalty law violates R.C. 2929.05(A) by requiring appellate courts and the Ohio Supreme Court, when conducting the proportionality review of "similar cases," to review only those cases in which a sentence of death was imposed. Appellant asserts that failing to include cases in which the death penalty was sought but not imposed results in an inadequate review.
This argument has been considered and rejected by the Supreme Court.State v. Jenkins, supra at 209; State v. Steffen, supra at 123. Accordingly, appellant's eleventh assignment of error is not well-taken.
 XII.
In his twelfth assignment of error, appellant asserts that the imposition of the death penalty, "at least in Lucas County, Ohio," is freakish, capricious and arbitrary. In support of his claim, appellant notes that only one person has been executed by the state since 1963, and in Lucas County, no one was sentenced to die between 1986 and December 1993, although there were many cases in which death penalty specifications were returned by grand juries during that period. This argument has been resolved by the Supreme Court of Ohio and is without merit. See State v. Zuern (1987), 32 Ohio St.3d 56, 64; State v.Jenkins, supra. Accordingly, appellant's twelfth assignment of error is not well-taken.
 XIII.
Appellant asserts in his thirteenth assignment of error that Ohio's death penalty is unconstitutional. The Supreme Court of Ohio has reviewed the constitutionality of this state's death penalty and has held the law constitutional "in all respects." State v. Evans, supra at 253-254, citing State v. Lott (1990), 51 Ohio St.3d 160; State v.Poindexter (1988), 36 Ohio St.3d 1; State v. Jenkins, supra. Accordingly, appellant's thirteenth assignment of error is not well-taken.
 XIV.
Appellant presents three arguments in support of his fourteenth assignment of error. Appellant first asserts that the aggravating circumstances in this case do not outweigh the mitigating factors beyond a reasonable doubt.
R.C. 2929.05 requires this court, and the Supreme Court of Ohio as well, to independently weigh all of the facts and other evidence in the record to determine whether the aggravating circumstances the defendant was found guilty of committing outweigh the mitigating factors found to exist. R.C. 2929.05(A); State v. Maurer, supra at paragraph four of the syllabus.
R.C. 2929.04(B) provides that when an aggravating circumstance set forth in division (A) of the statute is found, the court:
 "* * * shall consider, and weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character, and background of the offender, and all of the following factors:
 "(1) Whether the victim of the offense induced or facilitated it;
 "(2) Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation;
 "(3) Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law;
"(4) The youth of the offender;
 "(5) The offender's lack of a significant history of prior criminal convictions and delinquency adjudications;
 "(6) If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim;
 "(7) Any other factors that are relevant to the issue of whether the offender should be sentenced to death."
We will first weigh against the aggravating circumstances of which appellant was found guilty the nature and circumstances of the offense; appellant's history, character and background; and the mitigating factors appellant presented. Appellant was found guilty of the following aggravating circumstances: purposely causing the death of Christopher Hammer with prior calculation and design and acting as the principal offender; purposely causing the death of Christopher Hammer while committing kidnaping and acting as the principal offender; and purposely causing the death of Christopher Hammer while committing aggravated robbery and acting as the principal offender.
In a mitigation hearing, the state bears the burden of proving that the aggravating circumstances outweigh the mitigating factors, but the defendant bears the burden of going forward with any evidence in mitigation. R.C. 2929.03(D)(1).
Appellant's sole witness in mitigation testified that if appellant were to receive a sentence of thirty years to life instead of a death sentence, and if the other sentences were ordered to be served consecutively, he would not be eligible for parole for forty years. This evidence could be considered under R.C. C2929.04(B)(7) as "any other factors that are relevant to the issue of whether the defendant should be sentenced to death." Appellant also presented evidence, under R.C.2929.04(B)(4), "relative youth of the offender," that he was only twenty years old at the time of the murder.
Appellant did not present evidence as to any of the other potentially mitigating factors listed under R.C. 2929.04(B). Our review of the totality of the evidence compels us to find that the combined factors cited by appellant, if in fact they are mitigating at all, are outweighed by the aggravating circumstances of murder committed with prior calculation and design, murder committed during the course of aggravated robbery and murder committed during the course of kidnaping.
We are further directed by R.C. 2929.04(B) to consider the nature and circumstances of the offense and the history, character, and background of the offender. Archie Dixon and Christopher Hammer appeared to be friends until September 22, 1993. They lived together, along with two other "friends," and spent free time together. It is undisputed that, prior to the murder, appellant and Timothy Hoffner spoke of killing Hammer as a means of obtaining his car and $4,000 in insurance proceeds Hammer anticipated receiving. On the night of the murder, appellant and Timothy Hoffner attacked Hammer in their home and tried to kill him. When their attempts to break his neck failed, they tied him, bleeding severely and begging them to stop, to a bed. Appellant went through Hammer's wallet and took $11, his driver's license, his social security card and his birth certificate. The two men then left, in Hammer's car, to dig the hole in which Hammer would soon be buried. When appellant and Hoffner returned to the house a short while later, they put Hammer in his car and drove to a wooded area in northwest Lucas County. Appellant and Hoffner forced Hammer to walk with them to the spot where they had dug a waist-deep hole. The men permitted Hammer to smoke a cigarette and say a prayer and then pushed him — arms and legs tied behind his body, gagged, and still conscious — into the hole. Appellant and Hoffner stood on top of Hammer and shoveled dirt onto him. After Hammer was buried under approximately two feet of dirt, the two men attempted to camouflage the site and left. Christopher Hammer died from asphyxiation. In the days following the murder, appellant used Hammer's social security card and birth certificate to obtain a State of Ohio identification card in Hammer's name but with appellant's photo. Appellant used the ID to obtain a duplicate title for Hammer's car and then sold the car for $2,800. This court finds that there is absolutely no mitigating evidence to be found in the horrifying nature and circumstances surrounding the unprovoked, calculated murder of Christopher Hammer.
As to appellant's history, character and background, none of his family members testified. Appellant did not request a presentence investigation or mental examination to shed light on his history, character and background.
Based on the foregoing, we find that the aggravating circumstances of this case outweigh the mitigating factors therein beyond a reasonable doubt.
Our remaining statutory duty in this case is to review appellant's sentence for proportionality and appropriateness. This is accomplished by comparing the facts and circumstances of this case with others from our geographic jurisdiction in which the death penalty was imposed.Steffen, supra, paragraph one of the syllabus. Of the numerous death sentences this court has Creviewed and affirmed since the death penalty was reimposed in 1981, none involved murder committed during the course of both aggravated robbery and kidnaping as in this case.
In State v. Rogers (Mar. 10, 1984), Lucas App. No. L-82-344, unreported, the defendant was found guilty of committing aggravated murder in the course of committing a kidnaping. Though the mitigation evidence showed the defendant to be mildly mentally retarded with a history of alcoholism, we affirmed the death penalty.
In State v. Barnes (Feb. 15, 1985), Lucas App. No. L-84-058, unreported, the defendant stabbed to death a bar employee during the course of a robbery. Evidence presented in mitigation indicated that Barnes came from a large family and that his father drank heavily but that his childhood was not abnormal and he was of average physical and mental abilities. This court affirmed the death penalty.
In State v. Esparza (Aug. 22, 1986), Lucas App. No. L-84-225, unreported, the defendant shot and killed the employee of a carry-out during the course of a robbery. In mitigation, Esparza presented testimony that he had led a chaotic, disruptive childhood, was abused by his father and had a diagnosed anti-social personality disorder. This court affirmed the death penalty.
In State v. Clark (Dec. 24, 1986), Lucas App. No. L-84-443, unreported, the defendant shot and killed a gas station attendant during a robbery. Clark submitted evidence in mitigation that his father had died when the defendant was young, that his wife was a prostitute and that he committed aggravated robberies to support a drug habit. We affirmed the death penalty.
In State v. Montgomery (Aug. 12, 1988), Lucas App. No. L-86-395, unreported, the defendant killed a woman, returned in her car to her apartment, left with the woman's roommate and fatally shot the second woman. Despite evidence in mitigation that Montgomery experienced a "bizarre childhood environment" and was mentally ill as a result, this court affirmed the death penalty.
In State v. Fox (Aug. 7, 1992), Wood App. No. 90-WD-067, unreported, the defendant kidnapped, stabbed and strangled a young woman and left her body in a roadside ditch. Despite evidence presented in mitigation that Fox suffered from a severe personality disorder, this court affirmed the death sentence.
Like Clark, Esparza, Montgomery and Barnes, appellant killed purely for financial gain. Unlike Montgomery, Esparza and Fox, however, appellant made no claim in mitigation of mental illness or personality disorder and, unlike Clark, he presented no evidence of drug addiction as a driving force behind his brutal act. In light of the foregoing, we conclude that the imposition of the death penalty in this case was appropriate because it was not disproportionate to the penalty imposed in similar cases.
Based on the foregoing, appellant's fourteenth assignment of error is not well-taken.
In conclusion, we find that the aggravating circumstances of this case outweigh the mitigating factors beyond a reasonable doubt and that the sentence of death imposed upon appellant, Archie J. Dixon, was appropriate.
On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant Archie J. Dixon has an automatic appeal to the Ohio Supreme Court pursuant to R.C.2929.05. For that reason, we order the clerk of this court to file a copy of this decision with the Clerk of the Ohio Supreme Court within fifteen days of the issuance of this decision in accordance with R.C.2929.05(A). We further order a continuance of the stay of execution of sentence previously granted by this court pending appeal to the Ohio Supreme Court. Costs to abide final determination by the Supreme Court of Ohio.
 APPEAL FROM DENIAL OF PETITION FOR POSTCONVICTION RELIEF
The relevant facts of this case, including the details of the murder of which appellant was convicted and the ensuing trial, as well as the procedural history prior to the filing of appellant's petition for postconviction relief, are set forth in the portion of this decision relating to appellant's direct appeal and will not be repeated herein. On October 21, 1996, eleven months after his sentence was imposed, appellant filed a petition for postconviction relief, pursuant to R.C.2953.21, in which he alleged ineffective assistance of trial counsel during the guilt phase and the mitigation phase of his trial. Appellant requested a hearing on his petition. In support of his petition, appellant asserted that trial counsel was ineffective in voir dire, opening statement, cross-examination of one of the state's witnesses, and closing argument. Appellant also asserted ineffective assistance of counsel for failure to adequately investigate and present evidence during the mitigation phase.
On June 16, 1997, the state filed a motion for summary judgment/motion to dismiss. On September 4, 1997, appellant filed a supplemental brief and response. On December 17, 1997, the trial court filed findings of fact, conclusions of law and a judgment entry granting the state's motion for summary judgment/motion to dismiss and dismissing the petition without a hearing. In dismissing appellant's petition, the trial court found that because appellant's claims of ineffective assistance of counsel could be determined through a review of the trial record, those arguments are properly made upon direct appeal and the claims thereby barred by res judicata. It is from that judgment that appellant appeals.
Appellant raises the following assignments of error:
 "I. THE TRIAL COURT ERRED IN DENYING MR. DIXON'S POST-CONVICTION PETITION WITHOUT AN EVIDENTIARY HEARING.
 "A. Appellant Met His Initial Burden To Establish A Claim Of Ineffective Assistance Of Counsel During the Mitigation Phase Under Ohio Revised Code § 2953.21(C) "Substantial Grounds For Relief" Does Not Require Proof On The Merits But Rather Sufficient Operative Facts To Establish A Claim.
 "II. THE TRIAL COURT ERRED IN APPLYING THE DOCTRINE OF RES JUDICATA TO DISMISS APPELLANT'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL DURING TRIAL PHASE."
Appellant's argument in support of his first assignment of error relates to the mitigation phase of the trial. Appellant asserts that the trial court should have granted him a hearing before ruling on his petition for postconviction relief.
With respect to granting a hearing, R.C. 2953.21(C) states:
 "(C) Before granting a hearing the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition and supporting affidavits, all the files and records pertaining to the proceedings against the petitioner * * * If the court dismisses the petition it shall make and file findings of fact and conclusions of law with respect to such dismissal."
The Supreme Court of Ohio set forth the test for obtaining a hearing upon the filing of a petition for postconviction relief based on a claim of ineffective assistance of counsel in State v. Jackson (1980),64 Ohio St.2d 107, at syllabus, as follows:
 "In a petition for post-conviction relief, which asserts ineffective assistance of counsel, the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness."
Further, "[w]hen determining whether there are substantive grounds for postconviction relief that would warrant a hearing, the affidavits offered in support of the petition should be accepted as true." State v.Swortcheck (1995), 101 Ohio App.3d 770, 772, citing State v. Strutton
(1988), 62 Ohio App.3d 248, 252. Generally, an affidavit containing evidence of the availability of mitigating evidence and the failure of trial counsel to attempt to obtain the mitigating evidence sets forth sufficient operative facts to show substantial grounds for relief.Swortcheck at 772, citing State v. Scott (1989), 63 Ohio App.3d 304,310-311.
Thus, the question before us is whether appellant submitted evidentiary documents containing sufficient operative facts to demonstrate first, the lack of competent counsel during mitigation and second, that his defense was prejudiced by counsel's ineffectiveness.
In his postconviction petition, appellant claimed that trial counsel failed to adequately investigate, prepare and present available mitigation evidence. In support of his petition, appellant submitted a fifty-one page report prepared by mitigation specialist Gary Ericson which contained details of appellant's family life; interviews with appellant's mother, his brother, a couple who were appellant's foster parents for about eighteen months when he was a teenager, and the pastor of a church appellant's family attended; information on appellant's juvenile adjudications and adult criminal record; educational and employment background; and medical history and psychological history. Appellant submitted the affidavit of Gary Ericson, in which Ericson stated that he submitted his report to defense counsel but counsel never met with him to discuss a mitigation strategy. Appellant also submitted affidavits of appellant's mother, brother and former foster mother, all of whom stated that they would have testified on appellant's behalf if they had been contacted by defense counsel, and the affidavit of a clinical psychologist with extensive experience in death penalty litigation who stated that defense counsel had access to information that might have been useful in mitigation and that the mitigation that was presented had no value.
The trial court noted that defense counsel had retained a mitigation specialist and were supplied with the specialist's report. The trial court further noted that an informed decision as to which witnesses to call on the client's behalf involves a tactical choice that is reasonably within the attorney's discretion and found that appellant had failed to establish a claim of ineffective assistance of counsel during mitigation.
The standard for evaluating an ineffective assistance of counsel claim was enunciated by the Supreme Court of Ohio in State v. Bradley (1989),42 Ohio St.3d 136, paragraphs two and three of the syllabus, as follows:
 "2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle
[1976], 48 Ohio St.2d 391 * * *; Strickland v. Washington [1984], 466 U.S. 668, followed.)
 "3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."
Petitioners bear the burden to plead both elements in order to adequately state a claim of ineffective assistance of counsel. SeeJackson, 64 Ohio St.2d 107. If the petition, affidavits, and/or supporting materials do not establish one of those elements, the petitioner has not stated a proper claim and the court may summarily dismiss the petition without a hearing. State v. Clark (Aug. 14, 1998), Lucas App. No. L-97-1151, unreported; State v. Clark (Apr. 17, 1998), Portage App. Nos. 96-P-0257 and 96-P-0258, unreported.
There is "`a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *.'" Bradley,supra at 142, quoting Strickland, supra at 689. In Ohio, a properly licensed attorney is presumed competent. State v. Hamblin, supra.
Appellant did present evidence dehors the record, as summarized above, that defense counsel arguably could have used in mitigation. Trial counsel clearly investigated appellant's background by way of hiring mitigation specialist Ericson. We find, however, that appellant failed to establish that counsel was deficient in not presenting the information contained in Ericson's report and in not calling the individuals mentioned above to testify or that the defense was prejudiced by counsel's actions. See Bradley, supra. In addition, appellant has not demonstrated a reasonable probability that the result of the trial would have been different had the mitigation report been used. SeeStrickland, supra. As such, appellant has failed to establish the existence of substantial grounds for relief on the basis of ineffective assistance of counsel and, therefore, the trial court was not required to grant a hearing on the petition. Accordingly, appellant's first assignment of error is not well-taken.
In support of his second assignment of error, appellant asserts thatres judicata did not apply in his case because he relied on evidence outside the record to support his claim of ineffective assistance of counsel during the guilt phase of the trial. We note, however, that while appellant asserted in his petition that trial counsel was ineffective in four respects — during voir dire, opening statement, cross-examination of a state's witness and closing argument — he supported his petition with evidence dehors the record only as to his argument regarding cross-examination.
To overcome the res judicata bar, the evidence must show that the petitioner could not have supported his constitutional claim based solely on information in the original trial record. State v. Cole (1982),2 Ohio St.3d 112, syllabus. Appellant supports his claims as to ineffective assistance during voir dire, opening statement and closing argument with citations to the trial transcript, and to that extent those claims could have been — and in fact were — raised on direct appeal and are barred by res judicata. State v. Combs (1994),100 Ohio App.3d 90, 106, citing Cole, supra, at 114 and State v. Perry
(1967), 10 Ohio St.2d 175, paragraph nine of the syllabus. We therefore agree with the trial court's decision as to those three claims. We must, however, separately consider appellant's claim that trial counsel was ineffective in failing to cross-examine state's witness, Kirsten Wilkerson. Typically, a claim of ineffective assistance of counsel with regard to cross-examination of witnesses can be fully determined by a review of the trial transcript. In support of his petition, however, appellant submitted the transcripts of two interviews which the police conducted of Kirsten Wilkerson the day Hammer's body was discovered and one interview conducted three days later. These transcripts were not a part of the trial court record.
Appellant complains that trial counsel's decision not to cross-examine Wilkerson was "an egregious and shocking omission." Normally, trial counsel is afforded wide latitude as to cross-examination of witnesses.State v. Garfield (1986), 34 Ohio App.3d 300. We have examined the interview transcripts which appellant claims could have been used as a basis for cross-examination and possible impeachment of Wilkerson. The potential usefulness of any questioning that may have stemmed therefrom is arguable at best and, in this court's opinion, is a matter that was best left to the discretion of trial counsel. We will not speculate as to exactly how trial counsel might have effectively cross-examined this particular witness. Wilkerson was an eyewitness to most of the horrible and violent events leading up to Hammer's murder and her testimony at trial was clear, unequivocal and highly incriminating to appellant. For defense counsel to have cross-examined her would have prolonged her presence in front of the jury and given additional and damaging emphasis to the story which she told. The decision not to cross-examine this witness clearly was a matter of trial tactic. We therefore find that trial counsel's decision to refrain from cross-examining Wilkerson did not so undermine the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result,Strickland, supra, and, therefore, trial counsel was not ineffective for failing to cross-examine Wilkerson. Based on the foregoing, appellant's second assignment of error is not well-taken.
On consideration whereof, this court finds that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas dismissing appellant's petition for postconviction relief is affirmed. Appellant is ordered to pay the court costs of this appeal.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 ___________________________ Richard W. Knepper, P.J.
Peter M. Handwork, J., JUDGE, Mark L. Pietrykowski, J., JUDGE, CONCUR.